IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CLARIBEL VALENTIN,
EMILIO MATOS

   *Plaintiffs,*

   v.

MICHAEL WYSOCK, PATRICIA
WYSOCK, NEW CASTLE COUNTY,
OFFICER CHRISTOPHER HEWLETT

   *Defendants.*

No. 1:21-cv-00399-SB

---

Katherine Butler, LAW OFFICES OF KATE BUTLER, ESQ., Wilmington, Delaware.

*Counsel for Plaintiffs.*

Geena Khomenko George, THE LAW OFFICES OF GEENA KHOMENKO GEORGE, LLC, Hockessin, Delaware; Richard L. Abbott, ABBOTT LAW FIRM, LLC, Hockessin, Delaware; Shae Lyn Chasanov, TYBOUT REDFEARN & PELL, Wilmington, Delaware.

*Counsel for Defendants Michael & Patricia Wysock.*

Nicholas Jaison Brannick, NEW CASTLE COUNTY LAW DEPARTMENT, New Castle, Delaware.

*Counsel for Defendants New Castle County & Officer Christopher Hewlett.*

**MEMORANDUM OPINION**

February 3, 2022

BIBAS, *Circuit Judge*, sitting by designation.

The complaint is the foundation of any lawsuit. It explains the law and facts supporting the plaintiff's claims. Indeed, when ruling on a motion to dismiss, judges can look only at the complaint's allegations. The lawyers here seem to have forgotten these basic principles. In support of his motion to dismiss, one defendant relies on a warrant not integral to the complaint. And plaintiff Valentin uses her briefs to add facts and recast her claims.

I cannot credit these efforts to circumvent the rules. And looking only at the complaint, I must dismiss all claims against New Castle County and all but one claim against Officer Hewlett.

## I. BACKGROUND

On a motion to dismiss, I take the facts alleged in the complaint as true. When Claribel Valentin bought a home, she ran into trouble with her neighbors. First Am. Compl., D.I. 6 ¶ 1 They disliked Valentin's Spanish-language music and repeatedly complained about the noise to the police. *Id.* ¶¶ 1, 11–14, 16, 18, 20–24.

The first thirteen times the police responded, they "determined that" Valentin "had committed no crime or other violation." *Id.* ¶ 23. But after the fourteenth call, they reversed course. *Id.* ¶ 25. Though they did not hear the noise that had bedeviled the neighbors, they arrested Valentin for violating a county ordinance that bans "unreasonable noise." New Castle County, Delaware Code § 22.02.006; First Am. Compl. ¶¶ 24–27, 69. Crucially, they did so without a warrant. *Id.* ¶¶ 28–32. The County never prosecuted Valentin. *Id.* ¶ 36.

Fuming about her warrantless arrest, Valentin complained to the police department. *Id.* ¶ 34. Though it found that the officers had breached department policy by arresting her, Valentin was still unhappy. So she sued New Castle County, Hewlett, and the neighbors for civil-rights violations. D.I. 6, ¶¶ 1, 35,

Now the County and Hewlett move to dismiss. D.I. 8, 16. To survive, Valentin's complaint must provide enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under that standard, Valentin's complaint mostly falls short. Only her federal-law claims against Hewlett survive.

## II. Valentin's State-Law Claims Against Officer Hewlett Fail, But Her Federal Claims Do Not

Valentin sues Hewlett for malicious prosecution, plus false arrest and imprisonment, under both federal and state law. Only her federal claims may proceed.

### A. Valentin's federal false-arrest-and-imprisonment claim survives

Valentin brings two counts alleging that Officer Hewlett wrongly arrested and imprisoned her. First Am. Compl. ¶¶ 59–66 (Count IV); *id.* ¶¶ 69–70 (Count V).

She says that both counts invoke § 1983 to allege constitutional violations. Pls' Br., D.I. 23, at 12. But I cannot read her complaint that way. Though Count V invokes federal law, Count IV never mentions it. First Am. Compl. ¶¶ 59–66 (Count IV); *id.* ¶¶ 69–70 (Count V). Read most naturally, Count IV alleges false arrest in violation of state tort law. D.I. 17, at 16. So that is how I will assess it. *See Digene Corp. v. Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 & n.9 (11th Cir. 2002).

3

*1. State claim.* Valentin's state-law false-arrest-and-imprisonment claim runs smack into governmental immunity. Delaware generally gives "all governmental entities and their employees … immun[ity] from suit" in their official capacities "on any and all tort claims," including malicious prosecution. Del. Code Ann. tit. 10, § 4011(a); *see Carr v. Dewey Beach*, 730 F. Supp. 591, 602 (D. Del. 1990). True, employees may be personally liable for acts "causing property damage, bodily injury or death" if "performed with wanton negligence or willful and malicious intent." Del. Code Ann. tit. 10, § 4011(c). But that exception does not apply here.

She does not properly allege that Hewlett "caus[ed] property damage, bodily injury or death." Rather, he claims that she suffered vague "pain and suffering, embarrassment, loss of reputation, [and] loss of enjoyment of the value of [her] home." First Am. Compl. ¶ 66. But those allegations do not satisfy the exception. *See, e.g.*, *Wilcher v. Wilmington*, 60 F. Supp. 2d 298, 306–07 (D. Del. 1999) (holding that mental anguish does not count as a "bodily injury").

Nor does her claim that she suffered "bodily injury" when Officer Hewlett handcuffed her. First Am. Compl. ¶ 66. That allegation is conclusory—Valentin does not explain what injuries, if any, she suffered. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[C]onclusory allegation[s] … do[] not supply facts adequate to [state a claim]."). Because Valentin does not overcome immunity, I dismiss her state-law claim.

*2. Federal claim.* Valentin's federal claim fares better. To state a false-arrest-and-imprisonment claim under § 1983, she must show that Hewlett arrested and detained

4

her without probable cause. *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Hewlett would have had probable cause only if, "at the moment the arrest was made," he "had reasonably trustworthy information" to "believ[e] that [Valentin] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

But the complaint suggests that he did not. Hewlett never heard the "unreasonable noise" coming from her home. New Castle County Code § 22.02.006; First Am. Compl. ¶ 64. He knew only that her neighbors had reported a noise. *Id.* ¶¶ 18–20. And they had baselessly reported her many times before. *Id.* ¶¶ 22–23.

With the neighbors' track record of crying wolf, their word could not carry enough weight to justify arresting Valentin without corroborating evidence. *Cf. Illinois v. Gates*, 462 U.S. 213, 227, 239 (1983). So Valentin has plausibly pleaded that Hewlett arrested her without probable cause.

Pushing back, Hewlett says he listed facts justifying Valentin's arrest in an after-the-fact warrant. *See* D.I. 17-2, at 5. But at this stage I may "take judicial notice of [police records] … only to establish their existence … not for the truth of the matters asserted." *Brown v. Evans*, 2021 WL 4973630, at *3 (D. Del. Oct. 25, 2021). Looking to facts in the warrant to supply probable cause would "undercut [Valentin's] complaint." *Id.* So I may not consult the warrant yet.

**B. Valentin's federal malicious-prosecution claims may proceed**

Valentin brings two claims alleging that Hewlett "maliciously initiat[ed] … [a] criminal proceeding" against her "without probable cause." First Am. Compl. ¶¶ 70 (Count V), 47–50 (Count II).

Again, Valentin says both claims rely on §1983 to allege Fourth Amendment violations. D.I. 23, at 10–11. Unlike Count V, Count II never says "§1983." *Compare* D.I. 6, at 8, *with id.* at 12. Plus, reading Count II to rely on §1983 would render Count V superfluous: both would assert claims against Hewlett under §1983. Finally, if Count II relied on §1983, it would fail to state a claim against the neighbors—Valentin does not allege that they were "acting under the color of state law," as §1983 requires. D.I. 17, at 11. So I will read Count II as stating a malicious-prosecution claim under Delaware law and Count V as stating a §1983 claim.

Like her state false-arrest-and-imprisonment claim, Valentin's state-law malicious-prosecution claim is barred by governmental immunity because she has not properly alleged bodily injury. *Carr*, 730 F. Supp. at 602.

But her federal malicious-prosecution claim may proceed. "To [plead] malicious prosecution under §1983," Valentin must allege that Hewlett "initiated a criminal proceeding … maliciously or for a purpose other than bringing [her] to justice." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). "Malice may be inferred from the absence of probable cause." *Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 674 n.8 (E.D. Pa. 2014) (quoting *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993)). As I have explained, Hewlett lacked probable cause to arrest Valentin. And, Valentin says, he "knew probable cause did not exist to charge [her]." Compl. ¶ 32. If true, that shows a subjective "lack of belief … in the propriety of the prosecution." *Lawson*, 42 F. Supp. 3d at 674 n.8. That is enough to state a claim.

### C. Officer Hewlett is not yet entitled to qualified immunity

Resisting liability, Officer Hewlett says he is entitled to qualified immunity. D.I. 17, at 19–20. But he does not meet his "burden of establishing entitlement" to immunity. *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010). True, he recognizes that he would be entitled to immunity if he "had probable cause to arrest Valentin." D.I. 17, at 20. Yet he offers no argument for why he should get immunity if he did not have probable cause. It would be "inappropriate" for me to grant immunity in response to that "cursor[y]" argument. *Estate of Massey v. City of Phila.*, 118 F. Supp. 3d 679, 693–94 (E.D. Pa. 2015).

### III. THE CLAIMS AGAINST NEW CASTLE COUNTY FAIL

Turn to the County. Valentin offers two theories about how New Castle County violated her federal civil rights. 42 U.S.C. § 1983; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Both fail.

### A. Valentin's custom-and-practice theory fails

Valentin first suggests that "the New Castle County Police Department ha[s] a custom and practice of allowing" warrantless arrests for misdemeanors "occurring outside of [the] police officer's presence." *Id.* ¶ 75. This, she says, violates Delaware law. *See* Del. Code Ann. tit. 11, § 1904. But § 1983 protects against violations of *federal* rights. "[W]hether her [] arrest was proper under Delaware law plays little role in that inquiry." *Jordan v. Town of Milton*, 2013 WL 105319, at *4 (D. Del. Jan. 3, 2013).

Alternatively, Valentin argues that this practice violates "the Fourth Amendment's prohibition on unreasonable searches and seizures." First Am. Compl. ¶ 75. But even if it did, she fails to show that the department's conduct was a policy or

7

practice. To show that, Valentin needs to point to either "well-settled … conduct" or "evidence of knowledge and acquiescence" in that conduct "by [] final policymakers." *Bolden v. City of Wilmington*, 2019 WL 133314, at *3 (D. Del. Jan. 8, 2019) (internal quotation marks omitted). But she does not.

Indeed, Valentin never identifies a similar arrest. Instead, she implies that her arrest must be evidence of a broader practice. But a "single incident violating a constitutional right" can establish a practice only if "done by [the] governmental [entity's] highest policymaker," not a "lower[-]level employee." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). And Officer Hewlett is certainly not the department's highest policymaker. *Cf. Clemons v. New Castle Cty.*, 2020 WL 5978343, at *7 (D. Del. Oct. 8. 2020) (holding that a lieutenant colonel in the department is not the highest policymaker).

True, Valentin's complaint alleges that the New Castle Police Chief "had actual knowledge" of the misdemeanor arrest practice "from … his more than two decades" on the job. First Am. Compl. ¶ 77. But she does not support this conclusion. To the contrary, she admits that the department found that her arrest was against its "policy." *Id.* ¶ 35. So her complaint does not plausibly allege a custom-or-practice claim.

Again, Valentin responds with arguments not in her complaint. She says repeated police investigations into noise at her house reflect a "policy" that violated her "privacy and liberty interests," including "freedom of expression," and deprived her of the "equal protection of the laws." D.I. 14, at 14. But her complaint never mentions those claims, so she cannot add them now. *Zimmerman*, 836 F.2d at 181.

She also argues that she need not describe a plausible custom or practice now because she is "entitled to develop a record" later. D.I. 14, at 14. Not so. To get to discovery, she must state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678. And custom-or-practice claims that fail to describe a custom or practice are not plausible. *See, e.g.*, *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 110–11 (3d Cir. 2014). So I must dismiss her claim. If she has evidence of a broader pattern, she may amend her complaint.

### B. Valentin's inadequate-supervision claim fails

Finally, Valentin alleges that the County "inadequately trained … [and] supervised its officers" and "failed to adopt a needed policy" regulating warrantless misdemeanor arrests. First Am. Compl. ¶ 76.

To state a failure-to-supervise claim, Valentin "must show that [the County's] failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). Though the Third Circuit has not weighed in, several circuits have held that the right at issue must be clearly established. *Lewis v. City of Phila.*, 2020 WL 1683451, at *12 (E.D. Pa. Apr. 6, 2020) (collecting cases). That makes sense. If a right is not clearly established, there are no "clear constitutional guideposts for the [County] to follow in developing policy." *Id.* (internal quotation marks omitted).

That requirement kills Valentin's claim. The right to be free from warrantless arrests for misdemeanors occurring outside the arresting officer's presence is not clearly established. To the contrary, courts of appeals have uniformly rejected such a right. *See, e.g.*, *Woods v. City of Chi.*, 234 F.3d 979, 995 (7th Cir. 2000); *Pyles v. Raisor*, 60

F.3d 1211, 1215 (6th Cir. 1995); *Fields v. City of S. Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991). So New Castle County could not be deliberately indifferent to it.

Even if there were such a right, Valentin acknowledges that the department tried to stop officers from violating it. Indeed, she admits that Hewlett "act[ed] 'outside of department policy'" by arresting her. First Am. Compl. ¶ 35. That suggests that the County *did* "adopt a needed policy." *Id.* ¶ 76.

In what is by now a familiar pattern, Valentin raises a new theory in her brief. She argues that Hewlett arrested her for violating a *civil* ordinance, not a *criminal* one. D.I. 14, at 10–11. And she says, because civil infractions do not justify warrantless arrests, the department's "policy" of arresting people who violate that ordinance was barred by the Fourth Amendment. *Id.* at 12; *see also Okorie v. Crawford*, 921 F.3d 430, 436 (5th Cir. 2019) ("[P]robable cause … of a civil violation generally does not allow warrantless arrest."). But if Valentin wants me to address this argument, she must add it to her complaint.

\* \* \* \* \*

Valentin plausibly alleges that Hewlett lacked probable cause to arrest her or file a criminal complaint against her. So I will let her § 1983 false-arrest-and-imprisonment and malicious-prosecution claims proceed. But her other theories fail. Her claims against New Castle County stumble because she does not show that the County is deliberately indifferent to or has a custom of violating Fourth Amendment rights. And her state-law claims against Hewlett fail because he is immune from suit. So I dismiss them. If Valentin wants to try again, she must amend her complaint.